[Cite as *State v. Reed*, 2016-Ohio-7416.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

| | |
|---|---|
| STATE OF OHIO | : |
| | :    Appellate Case No. 2016-CA-1 |
|     Plaintiff-Appellee | : |
| | :    Trial Court Case No. 15-CR-121 |
| v. | : |
| | :    (Criminal Appeal from |
| BRANDON REED | :     Common Pleas Court) |
| | : |
|     Defendant-Appellant | : |
| | : |

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of October, 2016.

. . . . . . . . . .

STEPHEN K. HALLER, Atty. Reg. No. 0009172, by STEPHANIE R. HAYDEN, Atty. Reg. No. 0082881, Greene County Prosecutor's Office, 61 Greene Street, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellee

THOMAS M. KOLLIN, Atty. Reg. No. 0066964, The Kollin Firm, L.L.C., 2372 Lakeview Drive, Suite H, Beavercreek, Ohio 45431
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Brandon Reed appeals from his conviction and sentence, following a no-contest plea, for Possession of Heroin. Reed contends that the trial court erred by denying his motion to suppress evidence, and by failing to grant his

motion in limine regarding the admission of his medical records.

{¶ 2} We conclude that there is competent, credible evidence in the record upon which the trial court could rely in overruling the motion to suppress. We further conclude that any issue regarding the motion in limine has not been preserved for appellate review, because the trial court reserved ruling upon it until the trial court was provided with the medical records for it to review. Reed entered his plea of no contest before the trial court ruled on the issue of the admissibility of the medical records.

{¶ 3} Accordingly, the judgment of the trial court is Affirmed.

## I. Reed Is Unconscious, and the Police Are Summoned

{¶ 4} In early November 2014, Randy Estep, a Sergeant with the Village of Jamestown Police Department, responded to a dispatch regarding an unconscious male, located at a residence on Xenia Street. The male was identified as Brandon Reed. Estep found Reed on the floor, unresponsive. Medics subsequently arrived on scene, and treated Reed by administering Narcan. Reed immediately began to improve, and began answering medical questions asked by the medics. Reed was transported to Miami Valley Hospital's Jamestown facility (MVHJ), which consists of a "stand-alone" emergency department.

{¶ 5} Estep remained on the scene for approximately ten to fifteen minutes after Reed was transported. Estep then went to MVHJ, arriving about 34 minutes after leaving the Xenia Street residence. He waited another fifteen to twenty minutes before being admitted to Reed's treatment room. Estep found Reed in bed, awake. Estep informed Reed that he was there to investigate why Reed had fallen unconscious. Estep informed

Reed that the medics had administered Narcan to him. At that time, Estep advised Reed of his rights under *Miranda v.* Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

{¶ 6} Estep, who has been an officer for twenty years, has encountered numerous individuals under the influence of narcotics or alcohol. Reed did not exhibit any of the signs of such a person. Estep had encountered Reed more than twenty times before this incident, and based upon those prior interactions, could not detect any deficiencies in Reed's speech or cognitive abilities during this encounter. Reed appeared to understand what Estep said, was alert, not slumping in bed, and was not slurring his words. Reed indicated that he understood his rights, as conveyed to him by Estep.

{¶ 7} Estep provided Reed with a medical release form provided to him by staff at MVHJ. Estep explained that the release would be used to obtain medical records solely related to the treatment provided by MVHJ for this specific indicent. He made Reed aware that he did not have to sign the release. Reed signed the release, and filled out the appropriate spaces on the release for his address, date of birth, and the date of treatment. Estep was in Reed's room for approximately ten to fifteen minutes.

{¶ 8} Another officer, Alex Carson, was present in the room at the time Estep informed Reed of his *Miranda* rights. He corroborated Estep's testimony that Reed was lucid, and did not show any signs of being under the influence. Carson confirmed that Reed stated that he understood his rights. Carson signed the medical release as a witness.

{¶ 9} Officer John Whittemore was later given the signed medical release form. He filled in the blank spaces, indicating that MVHJ would convey Reed's records to Officer

Whittemore. Whittemore also checked various boxes indicating a request for a "face sheet," discharge summary, laboratory reports, physican progress notes, physician orders, and emergency treatment. He then forwarded the release to the facility.

## II. The Course of Proceedings

{¶ 10} Reed was indicted on one count of Possession of Heroin, in violation of R.C. 2925.11(A), a fifth-degree felony. Reed moved to suppress his statements and medical records. In support of that motion, he argued that he did not have the capacity to consent to speaking with the police, or to sign the medical release form.

{¶ 11} Reed later moved, in limine, to block the admission of his medical records. He argued that there was no evidence that MVHJ had conducted tests for opiates in accord with Department of Health requirements, and that no independent analysis of his blood was conducted.

{¶ 12} Following a hearing, the trial court overruled the motion to suppress. The trial court further reserved ruling on the motion in limine. Thereafter, Reed entered a plea of no contest. He was sentenced to 60 days in jail, and five years of community control. He was also ordered to submit to evaluation and treatment.

{¶ 13} Reed appeals.

## III. There Is Evidence in the Record to Support the Trial Court's Conclusion that Reed's Waiver of his Rights with Regard to his Statements and Medical Record Was Knowing and Voluntary, and that the Medical Records Subject to the Waiver Were Identified

{¶ 14} Reed's First Assignment of Error states as follows:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS STATEMENTS AND ADMISSION OF MEDICAL RECORDS.

{¶ 15} Reed contends that because he was recovering from a heroin overdose at the time he was questioned, he did not have the capacity to knowingly, voluntarily, and intelligently waive his rights. He also contends that the medical release form he executed during his interrogation was likewise invalid, because he did not have the capacity to consent. Finally, he contends that he could not consent to the release of his records, because the form did not indicate what records would be released.

{¶ 16} "Under the Fifth Amendment to the United States Constitution, no person shall be compelled to be a witness against himself. In order to ensure that this right is protected, statements resulting from custodial interrogations are admissible only after a showing that the procedural safeguards described in *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), have been followed." *State v. Western*, 2015-Ohio-627, 29 N.E.3d 245, ¶ 12 (2d Dist.). "[T]he State has the burden to show by a preponderance of the evidence that a defendant's confession was voluntarily given." *Id.* at ¶ 16.

{¶ 17} "Whether a statement was made voluntarily and whether an individual knowingly, voluntarily, and intelligently waived his or her *Miranda* rights are distinct issues." *State v. Lovato*, 2d Dist. Montgomery No. 25683, 2014-Ohio-2311, ¶ 30. Generally, statements made to police after a knowing, intelligent, and voluntary waiver of

an individual's *Miranda* rights are presumed voluntary. *Id.* at ¶ 31. However, " '[t]he *Miranda* presumption applies to the conditions inherent in custodial interrogation that compel the suspect to confess. It does not extend to any actual coercion police might engage in, and the Due Process Clause continues to require an inquiry separate from custody considerations and compliance with *Miranda* regarding whether a suspect's will was overborne by the circumstances surrounding his confession.' " *State v. Porter*, 178 Ohio App.3d 304, 2008-Ohio-4627, 897 N.E.2d 1149, ¶ 14 (2d Dist.). Therefore, "[r]egardless of whether *Miranda* warnings were required and given, a defendant's statement may have been given involuntarily and thus be subject to exclusion." *State v. Kelly*, 2d Dist. Greene No. 2004–CA–20, 2005-Ohio-305 ¶ 11.

{¶ 18} When making a determination regarding whether a valid waiver has occurred, we must "consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), paragraph two of the syllabus.

{¶ 19} The record demonstrates that Estep entered Reed's treatment room, and informed him as to why Estep was conducting an investigation regarding Reed's loss of consciousness. The record shows that Reed received *Miranda* warnings, and orally waived his *Miranda* rights before making any statements to the police, and before signing the medical release. The State presented testimony of two law enforcement officers who observed him at the emergency facility. Both testified that they did not observe any signs that he was under the influence of any narcotic. They testified that they did not detect

any slurring of his speech.   He had no trouble speaking, and he responded appropriately to the questions asked.   Furthermore, the record contains evidence that the police informed Reed what medical records were being sought.

{¶ 20} During the suppression hearing, defense counsel introduced an exhibit purporting to be one page of Reed's medical records, in an attempt to contradict the testimony of the officers regarding Reed's mental status.   The document indicates that Reed "arrived alert and oriented" to MVHJ.   The document further indicates that about 30 minutes after arrival, Reed "became more tired," and had an elevated heart rate.   The document indicates that he was then administered Narcan and a medication for chest pain, and that the chest pains improved thereafter.   The document also indicates that an EMT crew arrived to transport Reed to a hospital facility.   The EMT crew indicated in the document that "[u]pon entering the room, patient sitting up on cot, alert and oriented x 3. Respirations unlabored.   Lung sounds clear.   Skin warm/dry/pink."[1]

{¶ 21} Appellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact.   *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998).   When ruling on a motion to suppress evidence, a trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses.   *State v. Treesh*, 90 Ohio St.3d 460, 472, 739 N.E.2d 749 (2001).   Accordingly, reviewing courts must defer to the trial court's findings of fact if competent, credible evidence exists to support the findings.   *State v. Dunlap*, 73 Ohio St.3d 308, 314, 652 N.E.2d 988 (1995).   A reviewing court then must

---

[1] From the timeline set out in the record, it appears that Estep interacted with Reed at MVHJ after the Narcan and chest pain medicine were administered, but before the arrival of the transport EMT crew.

independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. *Long* at 332, 713 N.E.2d 1.

{¶ 22} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). In *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997), we observed: "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness."

{¶ 23} Here there is competent, credible evidence in the record upon which the trial court could rely in finding that Reed was capable of understanding his actions at the time he spoke to the police and signed the medical release. The trial court was free to accept the testimony of the officers regarding Reed's mental status as credible. The trial court also had the benefit of corroborating evidence, in the form of the medical record indicating that, although he was tired, Reed was alert and oriented while at the facility. Thus, we conclude that the trial court did not err in finding that Reed voluntarily waived his rights under *Miranda*, and that he had the capacity to consent to the release of his medical record. *See State v. West,* 2d Dist. Montgomery No. 23547, 2010-Ohio-1786, ¶ 17 (despite fact that defendant was intoxicated, "record supports the conclusion that [her] ability to reason was not so impaired that she was unable to understand her Miranda rights or the consequences of waiving them"). We further conclude that the trial court

did not err in determining that Reed was aware of what records would be obtained with the medical release.

{¶ 24} Accordingly, the First Assignment of Error is overruled.

## IV. The Issues Raised in Reed's Liminal Motion Concerning his Medical Records Have Not Been Preserved for Appellate Review

{¶ 25} The Second Assignment of Error asserted by Reed is as follows:

THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING MEDICAL RECORDS PURSUANT TO AN INVALID AUTHORIZATION.

{¶ 26} Reed contends that the trial court should have sustained his motion in limine to block the admission of his medical records.   In that motion, Reed argued that there was no evidence that MVHJ had conducted tests for opiates in accord with Department of Health requirements, and that no independent analysis of his blood was conducted as required by R.C. 2925.51(E).   The State maintains that the ruling on the motion in limine is not capable of review.

{¶ 27} In general, a court's ruling on a motion in limine is a preliminary, interlocutory order that is not preserved for appellate review unless the error is preserved by objection when the issue is addressed during trial.   *State v. Johnston*, 2d Dist. Montgomery No. 26016, 2015-Ohio-450, ¶ 13.   However, "a motion in limine can serve as the functional equivalent of a motion to suppress, which determines the admissibility of evidence with finality."   *Id.* at ¶ 16.   "The essential difference between a Crim.R. 12[(C)] motion [e.g., a pretrial motion to suppress] and a motion in limine is that the former is capable of resolution without a full trial, while the latter requires consideration of the

issue in the context of the other evidence." *Id.* at ¶ 17, quoting *State v. Hall*, 57 Ohio App.3d 144, 146, 567 N.E.2d 305 (8th Dist. 1989). "[A] motion in limine is treated as a motion to suppress when an evidentiary hearing is held on the motion at which testimony regarding the subject of the motion is fully presented with cross-examination." *Id.* at ¶ 22. Thus, "a plea of no contest preserves the defendant' right to appeal from an adverse ruling on a motion in limine when it is the equivalent of a motion to suppress." *Id.*

{¶ 28} In this case, the trial court reserved ruling on the issues raised in the motion in limine, and ordered the parties to submit the medical records obtained by the police. The trial court, at the suppression hearing, did not have any medical records, other than the one page presented by defense counsel, before it. That one page did not indicate that any testing for opiates had been conducted. Consequently, the trial court had no ability to determine whether Reed's argument had any basis in fact.

{¶ 29} We conclude that regardless of whether the motion in limine was the equivalent of a motion to suppress, we cannot review the issue presented by the motion, because the trial court made no ruling thereon, except to defer ruling until some later point after it received the records. There was no testimony regarding the issues raised in the motion upon which we can rely in resolving the matter. Since Reed entered his plea of no contest prior to any ruling on the issue, there is nothing for us to review.

{¶ 30} The Second Assignment of Error is overruled.

## V. Conclusion

{¶ 31} Both of Reed's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

HALL and WELBAUM, JJ., concur.


Copies mailed to:

Stephen K. Haller
Thomas M. Kollin
Hon. Michael A. Buckwalter